Next state's call for oral argument is Quilquist v. State of Illinois at all counsel. Whenever you're ready, you may proceed. Good morning, your honors. Good morning. May it please the court. Adieu. Your honors, I am John Clemens, attorney for the plaintiff appellant who is William J. Quilquist. And I'd like to start out with a little history on the case. In July of 2010, the case was first filed on behalf of the plaintiff, who at the time was a retired Jackson County sheriff and the former warden of the Illinois Youth Center, referred to as IYC, a juvenile correctional facility in Murfreesboro, Illinois. The complaint was filed in three counts, and count one was against a gentleman by the name of Kurt Friedenauer, who was sued individually and as the director of the Illinois Department of Juvenile Justice. And that count was brought under the whistleblower protection portion of a major piece of legislation in Illinois called the Officials and Employees Ethics Act. Then there was a second count against the Department of Juvenile Justice itself under the Whistleblower Act, and a third count against the State Department of Juvenile Justice on a retaliatory discharge theory. Now all of the conduct in question goes back to July of 2008, and we are here this morning because the defendants filed a 735 ILCS 5 backslash 2615 motion, a motion to dismiss, attacking all three counts of the complaint. The trial judge granted the motion and dismissed all three counts. Now I'm here today appealing only the dismissal of count one. We're only seeking to reverse the court's action on count one, which is solely against this gentleman, Kurt Friedenauer, who was the director of the department. And I guess for those of us old timers, the Department of Juvenile Justice used to be the Illinois Department of Corrections Juvenile Division, and then I believe under Governor Blagojevich they split it into two separate, the adult corrections and the juvenile corrections. Let me focus now on that count one and look at its statutory basis because we're dealing with a statute that doesn't have a lot of case history. Article 430 of 5 ILCS I believe was enacted in 2003, and the broad title was the State Officials and Employees Ethics Act, and it was a major step in an effort to clean up Illinois government. Part of the overall act was Article 15 called the Whistleblower Protection, which was another effort to clean up state government and an effort to provide a judicial remedy to state employees who, as the title suggested, blew the whistle on another state employee. And disclosed what the employee reasonably believed was a violation of the law committed by some other state employee or supervisor. And there are broad penalties contained in the act for the conduct. What count one is about is a state employee, Plaintiff Kilchrist, who ran the Illinois Youth Center, Marion, he was the warden, who essentially stood up to the director of the agency, his boss, his supervisor. And he said no to Kurt Friedenauer in discharging an employee who worked at the IYC in Murfreesboro, a gentleman by the name of Gerald Heisum who was under investigation concerning an incident with one of the juvenile residents, they call them cadets. The IYC is a boot camp model in Murfreesboro. You don't dispute that the plaintiff resigned and was never fired. Well, our contention, your honor, is that this was a forced resignation. So it's a forced resignation as opposed to a change in his condition of employment. Well, it does change his condition of employment. Okay, but why would you say I'm going to, I need you to fire me because this is wrong and I'm not going to carry out your order. What he says to Friedenauer is I'm not going to fire Heisum. This is wrong. This is illegal. And Sheriff Kilchrist, Warden Kilchrist's thinking was that you're not giving this man due process. You're not giving this staff member at IYC due process because the hearing's fixed. Friedenauer's already instructed Kilchrist get rid of this guy, fire him, terminate him, we don't care what the evidence is. Or the investigation. So the outcome is predetermined. And we believe that falls into the due process area. Now, we believe the statute requires certain elements, certain things have to be met. One is it has to be a protected activity. That's 15-10 of the provision of the statute. And the protected activity provision includes, at paragraph one, activity that the employee, that would be Kilchrist, reasonably believes is in violation of the law. Then, secondly, there has to be some report of the activity. Well, we believe that's as simple as the fact that Kilchrist is telling his supervisor, the director, this is wrong, this is illegal. He's fulfilling the reporting prong of the act. And then third, there has to be some retaliatory action. And that's required under 15-5, which goes to the definitions. What's the retaliatory action? Losing his job. A forced resignation. What was the force? Pardon? What was the force that resulted in his resignation? Well, what he's doing is direct insubordination to the director. The director is telling him, Warden Kilchrist, you will fire Mr. Hyson. And Warden Kilchrist is saying to the director, I can't do that. I won't do that, it's illegal. And what is the force that's applied on Sheriff Kilchrist that results in his resignation? Well, we believe that the evidence in this case, if it were to be allowed to proceed to trial, will show that Friedenauer wouldn't stand for this insubordination, wouldn't stand for Kilchrist attempting to counterman his order to fire Mr. Hyson, and that left Kilchrist with the only alternative of resignation, or we fire him. Was that position of his superior indicated in the phone conversation in which Sheriff Kilchrist resigned? Kilchrist indicates to Friedenauer that he has never been fired in his life, in his employment history, which is, I think, a very normal human reaction, that I'm about to lose my job, he believes, and we believe the evidence will show if we can get this case before a trial court, and Friedenauer is like, you know, you're out of here, so Kilchrist says, I'll tell you what, Friedenauer doesn't say you're out of here, he doesn't say you're fired, he doesn't say pack your belongings. Kilchrist beats him to that point by saying, I'm just going to quit. I've never been fired before in my adult employment career. And Friedenauer's response is, that's fine. And we believe that the complaint has laid this out. I think Mr. Magin and I agree on one thing, and that's the standard of review, which is de novo, and we think in looking at this, that the lower court wrongly dismissed this case because it applied too stringent a standard under a 615 motion to dismiss. We believe there were well-pleaded facts. The complaint, taken as true and in the light most favorable to the defendant, clearly laid out what this activity was. This was about a fix. It was about the director of a state agency saying to one of his wardens, I don't care about a hearing, I don't care about an investigation, this guy is out the door. And get it done. And it's about a state employee doing what we would contend is exactly what this statute was supposed to allow state employees to do. Can you tell me how you can distinguish the Supreme Court case of Hinthorn? Well, Judge, I think Hinthorn v. Rollins of Bloomington is a real important case because I think there's language in there that talks about there are no magic words that an employer has to say to escape responsibility for an improper discharge. In other words, there doesn't have to be a Kurt Friedenauer to Kilquist, you are fired. Or I think Hinthorn says, you're fired. So long as the employee's message is that they're being involuntarily terminated. I mean, Mr. Kilquist didn't want to lose his job. This was not obviously a voluntary matter where, oh gee, I'll just retire. It was because he felt reasonably that he was coerced and pressured and made to resign. An involuntary discharge. And I think when you read Hinthorn, it's got some language in there that states that. It also, since the Court has mentioned this case, talks about complaints need to inform defendants of the crux of the claim. And that's sufficient. And what the plaintiff has pled in this case is a forced resignation, which is a discharge. And it's up to the plaintiff to prove that at trial. And that's the opportunity we're asking for. But I don't think under pleading that you have to prove your case in the complaint, in the complaint itself. I'm trying to think of a case that's in the brief, but Hinthorn cites another very good case from the Illinois Supreme Court. Pommateer. Pommateer v. International Harvester. Which talks about a plaintiff's complaint can be less specific as long as it informs the defendant of the crux of the claim. And I think we've done that. I think the trial court, and our contention here this morning, is the trial court has looked very narrowly at this statute. And we would submit the Illinois legislature intended that this statute be very broad, that it can't list or enumerate every single possible action between state employees and supervisors and government. And we believe the trial court, with all due respect to that court, was way too narrow. We believe this is a very broad piece of legislation that the General Assembly intended for people like Bill Gilquist to stand up and blow the whistle. And he did. And the consequences were he lost his job. He didn't want to lose that job. But he also didn't want a firing on his record, which we believe most people would understand in the context of, oh, I don't want this black mark. Any other questions, Your Honors, I could answer? Is there any indication in the record or in your pleading that would indicate a type of relationship between Sheriff Gilquist and the supervisor that would indicate that in saying no to him he would be fired? Any past history that would indicate that? No, we did not plead that, Your Honor. We didn't think we had to be that specific. My feeling is that's an evidentiary matter at trial. And, of course, the jury can decide fired or quit.  Thank you, Your Honors. Counsel? Good morning, Your Honors. May it please this Court. Counsel, my name is Tim Camaggio. I'm the Assistant Attorney General, and I represent Affiliate Freepower this morning. Your Honors, Mr. Gilquist alleges, as was pointed out this morning, that he resigned. That's what he alleges. He says in his complaint that he was on the phone with the director, that he spoke his mind, and then he quit. The complaint alleges nothing about any special relationship, Your Honors, nothing about a past history. The complaint doesn't allege that Mr. Freepower said a peep to Mr. Gilquist. We heard that this morning. And they've been very candid in their briefs of conceding. Not one word was said. No anger, no threat, no discussion whatsoever. We would suggest that when somebody resigns, when somebody quits, they don't get to bring a cause of action based on the theory that they were terminated, and they certainly don't get to allege that they were somehow the victim of retaliatory activity. Mr. Gilquist is out of a job because Mr. Gilquist chose to be out of a job. He has a refusal to assist in the termination of an employee not included in the definition of protective activity. In this particular whistleblower statute, Your Honor, the statute covers two particular, actually three particular activities, and they're all about giving information. One is speaking to a supervisor. And by the way, not the law, I'll circle back to that. But one is giving information to a supervisor. The other is giving testimony in front of an investigative committee. And then the third is some obstruction with the statute itself. But those are verbal. Those are information giving. And in the circuit court, the judge, this was an easy call for the circuit court on the actual complaint. And I'm glad Your Honor brought up that point because if we take a look just at the four corners of the complaint, the protected activity was that Mr. Gilquist refused to engage in this activity. And that's not listed. That may be under other whistleblower statutes that may be covered as protected activity elsewhere, but under this particular statute, it's not covered. And I don't think they make any allegation currently that it is. What I think has happened, if I understand the appellant's briefs correctly, is that they've now morphed away from that. They say, yeah, we actually sort of mispleaded in the four corners of our complaint. And now as you heard this morning, they're trying to talk more about, well, there was a conversation with the director. And that conversation was the protected activity. But so I think the particular activity you're talking about, Your Honor, is not covered by the statute. The circuit court plainly found it wasn't covered by the statute. And I think they've abandoned that even this morning because it's not a protected activity. The statute that we're talking about requires at least three things to be pleaded. One, there needs to be a disclosure. So a plaintiff has to allege that there was a policy, a practice, or an activity that he brought to light. And we heard this morning, the counsel actually said the point of the statute is to blow the whistle on another state employee. So there needs to be a disclosure, something new given to somebody to enlist their help or to let them know about a policy, practice, or activity. Second element, that you... But wouldn't Kilquist's explanation that this was a violation of due process, this was illegal, and here's why, constitute that and fulfill the first requirement? You know, Your Honor, it would not fulfill either the first or the second requirement, if I may do them both together. Sure. And the second requirement is that you allege facts given rise to a reasonable belief that he throws them off. As we pointed out, the Huffman case and the dictionary, they say that disclose means to provide some new information. If you're talking to the alleged whistle, or the alleged wrongdoer in this case, right, your supervisor, you're not providing any new information. You're telling that person about a policy, practice, or activity that in your view they came up with. So there's no disclosure, there's no new information. And it's not just semantics. But wouldn't an explanation of, obviously this person came up with the policy. They said, you know, go ahead and fire this person. Why wouldn't the explanation that this was a violation constitute new information? Two things. One, and it's outlined in the Huffman case as well, right, and it's given voice in the statute. The statute says you need to disclose a policy, practice, or activity, full stop, that you reasonably believe to be unlawful. So when you tell somebody the disclosure is about the policy, practice, or activity, the disclosure, the relevant disclosure is about the underlying facts. You separately need to allege that it's illegal, but the Huffman case made this point directly. That if you tell somebody, well, I think it's unlawful, well, you're not telling them any facts. They already know the underlying transaction.  Because, you know, we hear a lot of sort of hyperbole here, but one of the problems here is that when an employee is having a conversation with a supervisor, that's a conversation in the workplace, right? It doesn't automatically become whistleblowing. It doesn't become, you know, whistleblowing is when you go to some third party to enlist their help because you think there's some injustice. When your boss tells you to do something, you say, no, I don't, you know, I don't think so, I have a difference of opinion, what have you. That's a conversation in the workplace. And the Supreme Court has warned us in the Metzger case, right? In Metzger, I think they were asked to imply a private cause of action under the Personnel Code. And they said they're not going to do that, and I apologize, I just want to get the quote correct, if I may. Yeah, here it is, right? They said if the courts were to interfere in this area, right, if the courts were to, in that case, read a cause of action into the Personnel Code where it doesn't exist, in our particular case, if the courts were to read disclose as being any conversation back and forth, right, that would, and here's the quote, deprive the state of its independent ability to manage its employees and to decide whether an action is retaliation or appropriate management. So, as I said before, when we talk about the word disclosure, it's not just semantics. It's important, right? It delineates, if you will, the line between conversations between an employee and his or her supervisor and an employee who goes out and actually does whistleblowing. Again, as counsel said, the point of the statute is to blow the whistle on another state employee. If you want to blow the whistle on another state employee, it's not mine, of course, it's from the Huffington case, the last person you would talk to is that other state employee. So to circle back, we need a disclosure. We would say there is no disclosure, there's no information being given, you can't give information to the person who came up with an activity. Second, and this was another point I think Your Honor raised. Second is whether there's facts alleged here which give rise to a reasonable belief that there was unlawful activity. And we heard some sort of very supercharged words today about a fix or that there was some statement back and forth that Mr. Friedenauer doesn't care about what the evidence says. Of course, none of that's alleged in the complaint. I don't know where that information comes from. But the circuit court actually challenged Mr. Kilchrist on this. The circuit court said, tell me, chapter and verse, give me one statute, give me one regulation that Mr. Friedenauer allegedly violated. And the answer is no, right? There was an incident that occurred.  According to the allegation complaint, Mr. Friedenauer decided that when he heard about the allegation, he understood that it was a sufficient moment that the employee should be discharged. There was an investigation. There was a report. The investigator, I gather, found that there was wrongdoing because the investigator recommended that there was a suspension. The report makes its way to Mr. Friedenauer. Mr. Friedenauer decides apparently there's nothing in the report that changes his mind. The circuit court asked Mr. Kilchrist, where is it written that the director of an agency needs to adopt, rubber stamp, a recommendation out of the investigator? The answer is nowhere. In fact, the law is exactly the opposite. Happens all the time. AOJs make recommendations and the director decides not to go along, or the commission decides not to go along. Your honors know this much better than I do, you see it more often than I do. So there's no allegation, there's no permit. There are no facts alleged to give rise to a reasonable belief that there's anything unlawful here. And we hear about the due process. Well, where's the due process violation? Again, Mr. Friedenauer heard about an incident. The gentleman was given notice, an opportunity to be heard, an investigation, a report was presented, and then Mr. Friedenauer made a recommendation himself, by the way. Keep in mind, as the circuit court pointed out, Mr. Friedenauer isn't the one who would even fire the underling. Mr. Friedenauer asked Mr. Kilchrist to simply start the paperwork, which then, as your honors know, goes over to CMS, the director of central management. And it's his or her decision, in this particular case, about whether to terminate him. And if the director of CMS should decide to terminate the employee, then the employee has his or her own rights. So there's notice, opportunity to be heard, no violation of any statute, no violation of due process. So I don't, you know, it's nice to talk about sort of these supercharged words, but when you take a look at the allegations of the complaint, there's simply nothing there. And last if I may, on the set, right, we need a disclosure, we need facts alleged, giving rise to a reasonable belief that something's awful, and then we need retaliatory action. And in this, I'd like to just discuss the Hinthorn case for just a second, if I may, if you don't mind. Hinthorn says, with respect to this particular point, that the complaint has to allege circumstances that make it clear that the plaintiff was not being given a natural opportunity to continue employment. That's at page 14 of our brief from page 531 of Hinthorn. The complaint has to allege circumstances. And in Hinthorn, let's remember what happened in Hinthorn. Hinthorn, an employee was called in to a meeting before a vice president, and the vice president said, you know, you're taking off too much time. You're costing us too much money. You ought to get another job. By the way, here's a voluntary resignation I've typed up for you. Sign it. Right? So an employee was called in to a meeting room, told here, you're costing us too much money. You're wasting too much of our time. You've got to get another job. Sign the voluntary resignation. When you allege those facts, right, the court has said, you know, alleging those facts, you've alleged that you were told, you were understood. You're not welcome here anymore. And then we'll have a trial to figure out whether that's true or not, right? But that's what you've alleged. Let's keep in mind here, what's been alleged is that Mr. Friedenauer said nothing. Did nothing. Right? What Mr. Kilquis now essentially says is, look, and we heard it this morning. I was afraid that sometime in the future, Mr. Friedenauer might fire me. And when you say that, when you allege that I was afraid that sometime in the future, somebody might fire me, there's at least three problems with that. One, you're admitting that nobody did anything to you. Right? If you're afraid that somebody might do something to you in the future, you're admitting that right now, today, in the real world, nobody did anything to you. Second, the statute doesn't give any protection to people who quit because they're afraid. Right? It requires retaliatory activity. Were you discharged? Were you demoted? Were you transferred to, you know, someplace you've never heard of? Those types of things. Concrete activity on the part of the employer. It doesn't say anything about quitting because you're afraid of what might happen sometime in the future. And third, I don't want to give you too far afield, but can you imagine what we're talking about if we should adopt Mr. Kilquis' view? Right? You take the deposition of the employer. He'd say, we're not going to ask you about any historical fact. Right? Come with me, if you will, into an imaginary world, a world where the employee hadn't quit. And tell me what's your very best guess about what you might have done if that happened. And the employer is likely going to say, I don't know. I didn't cross that bridge. It never happened. I can't tell you. So then what do we do? Do we subpoena his or her family and friends? Was he or she a hothead? Was he or she mild-mannered? Right? And then what do we tell the jury? Your job is hard enough, jury, trying to figure out between competing versions of historical fact. But now we want you to get out of the old jury room crystal ball. Right? And give us your very best guess about what might have happened in the future. Right? And, you know, again, I don't mean to belabor the point, but when we start dealing in the world of guesses about what might have happened if the world were different, we've traveled very, very, very far away from what this statute is about. So at the end of the day, circling back to the beginning, we have a complaint that on law fours alleges a particular theory of recovery, that Mr. Kilkus was resigned, and that he resigned because he refused to participate in an activity. The circuit court had no problem getting rid of that. Resign isn't covered, and refusing to participate in an activity is not protected activity under this statute. Don't know about all the statutes, but this one I'm looking at, it's not there. Right? So then we take a look at what's being alleged today in the complaints and in this one. Right? Is there a disclosure? No. You can't make a disclosure to somebody who knows already about the facts. And to your honor's point, the statute and the Huffman case highlight that the disclosure is about the facts, not the legal consequences of those facts. Second, have you alleged in this complaint facts demonstrating a reasonable belief that there was some unlawful activity? Circuit court challenged Mr. Kilkus on that. Give me the statute. Give me the regulation. Not a peep. You hear this discussion about due process, but as I said, when somebody is given notice, opportunity to be heard, and at the end of the day, all the director is doing is making a recommendation to another director for his or her final decision, and if that director should decide to terminate, the employee still has a process. I don't think there's any precedent. In fact, there's a positive, there's no precedent cited here today, which suggests that's at all a deprivation of due process. And then finally, the termination issue or the retaliatory activity. When you resign, when you quit, you don't get to allege. And here, again, no special relationships, no peep whatsoever. Mr. Friedenauer is not alleged to have said anything, and they can see that in the papers and they can see that in their brief. If Your Honor has any additional questions, I'm happy to discuss them. I don't believe we do. Thank you. Okay. Thank you very much for your time. Counsel? Thank you, Your Honor. I think it is extremely simplistic in the facts of this case to suggest that the plaintiff chose to quit because he just didn't want to do something his director told him to do. What this complaint clearly lays out is an employee, Plaintiff Kilquist, who is telling his director that you're asking me to do something, and I'm looking at paragraph 13 of the complaint, that is wrong, illegal, and in violation of the law, denying hycem due process of law. And this is not a quick conversation. Friedenauer persists in telling Kilquist to dismiss hycem. Now, I don't know how CMS gets in this. I mean, this is the director telling the warden to dismiss an employee. If there's going to be any type of further hearing, that's later. The context that this all happens in, and it's clearly laid out here, is that Friedenauer begins by telling Kilquist to tell a gentleman by the name of Cary Camp. He was the designated investigator hearing officer because we've got an employee disciplinary thing and there's all sorts of rights correctional employees have when they're disciplined and they're going to face some type of sanction. Friedenauer is telling Kilquist from day one to get Camp to fix the outcome of the investigation. Camp's the investigator. That's in paragraph 7. And then we jump to after the investigation is complete, which gets us into the later paragraphs, 9 is where Camp advises that he's completed his review, we're telling the history. Then Friedenauer is telling Kilquist, fire him, fire him. I don't care what Camp says. I don't care about Camp's investigation. There's supposed to be a fireman here. Who cares what the investigation shows? When we go to paragraph 12, this is what Kilquist is trying to get across to his supervisor, who happens to be the head of the agency, that you can't fix an investigation, you can't predetermine it. You're denying someone their due process of law, a fundamental fairness in a disciplinary procedure. That's a protected activity. That's a protected activity. The statute talks about protected activities are law violations, legal violations. And I'm sure this is what the General Assembly had in mind, that we're not going to deny people due process of law. We're going to not deny people fair hearings, fair investigations. We're not going to fix the result before it takes place. That's a protected activity. Now, the disclosure question is, Kilquist is telling the very person who's engaged in what we contend is a protected activity. Kilquist is protected. Friedenauer is engaged in the illegal activity. And Kilquist is telling him that. Under the statute, that would appear to be a disclosure. The statute lays out telling your supervisor. Who's Kilquist's supervisor? Kurt Friedenauer, the director. He discloses to him. I would suggest to this court, and as always, this court makes up its own mind and reads cases as it determines and interprets them as it determines, but I think the Huffman case is a federal case dealing with federal law, dealing with federal issues, and really does not make a whole lot of difference or precedent to this situation where we're dealing with a fairly new Illinois statute. A fairly new Illinois statute. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. The court will be in the short recess. All rise.